## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEW MEXICO

**ARMANDO VALDEZ-BORJA,**

      **Petitioner,**

**v.**
                                       **Civ. No. 18-1237 KG/KK**
                                       **(Cr. No. 16-3390 KG)**

**UNITED STATES OF AMERICA,**

      **Respondent.**

## <u>MAGISTRATE JUDGE'S</u>
## <u>PROPOSED FINDINGS AND RECOMMENDED DISPOSITION</u>[1]

**THIS MATTER** is before the Court on Petitioner Armando Valdez-Borja's ("Mr. Valdez-Borja") Motion Under 28 U.S.C. § 2255 to Vacate, Set Aside, or Correct Sentence by a Person in Federal Custody (Doc. 1) ("Motion") and Memorandum of Law and Argument in Support of Motion to Vacate Set Aside or Correct Sentence Pursuant to 18 U.S.C. 2255 (Doc. 2), which he filed *pro se* on December 31, 2018. The Government responded in opposition on August 28, 2019. (Doc. 11.) Having carefully considered the parties' submissions, the civil and criminal records, and the relevant law, the undersigned recommends that Mr. Valdez-Borja's claim for relief be **DENIED**.

### I.     FACTUAL BACKGROUND AND PROCEDURAL HISTORY

On April 5, 2016, the Government charged Mr. Valdez-Borja by criminal complaint with transporting aliens who were unlawfully in the United States in violation of 8 U.S.C. § 1324(a)(1)(A)(ii) (transporting an alien unlawfully in the United States) and with fleeing an immigration checkpoint in violation of 18 U.S.C. § 758. (CR Doc. 2).[2] On August 16, 2016, Mr.

---

[1] United States District Judge Kenneth Gonzales referred the case to the undersigned pursuant to 28 U.S.C. § 636(b)(1)(B) and (b)(3) on June 7, 2019. (Doc. 5).

[2] References to the "CR Doc." are to the criminal docket no. Cr. 16-3390 KG (D.N.M.), in the underlying criminal case.

Valdez-Borja pled guilty pursuant to a Plea Agreement to an Information charging him with conspiracy to transport illegal aliens in violation of 8 U.S.C. § 1324(a)(1)(A)(v)(I). (CR Doc. 28 at 2; CR Doc. 29.) As part of the Plea Agreement, the Government agreed not to bring additional charges against Mr. Valdez-Borja based on the events of April 2016. (CR Doc. 28 at 6 (¶ 14).) On June 28, 2017, the Court entered judgment against Mr. Valdez-Borja and sentenced him to 41 months' imprisonment, the low end of the sentencing range. (CR Doc. 47; CR Doc. 56 at 20:16-21:9.) Mr. Valdez-Borja appealed the judgment to the Tenth Circuit, which, finding that the Plea Agreement contained a valid appeal waiver, dismissed the appeal. (CR Doc. 60-1.)

Mr. Valdez-Borja now seeks to modify his sentence, arguing that plea counsel and sentencing counsel[3] provided ineffective assistance during the plea and sentencing processes, respectively. (Doc. 1 at 11-17). The undersigned has thoroughly reviewed the pleadings and attachments in this proceeding and the pleadings and documents in the underlying criminal case, Cr. No. 16-3390 KG. For the reasons explained below, the Court proposes to find that the Motion, exhibits, and record conclusively establish that Mr. Valdez-Borja is not entitled to relief and that an evidentiary hearing is unnecessary. 28 U.S.C. § 2255(b); *United States v. Flood*, 713 F.3d 1281, 1291 (10th Cir. 2013); *United States v. Kennedy*, 225 F.3d 1187, 1193 (10th Cir. 2000).

## II.    APPLICABLE LAW

Pursuant to 28 U.S.C. § 2255, a federal prisoner who

claim[s] the right to be released upon the ground that the sentence was imposed in violation of the Constitution or laws of the United States, or that the court was without jurisdiction to impose such sentence, or that the sentence was in excess of the maximum authorized by law, or is otherwise subject to collateral attack, may move the court which imposed the sentence to vacate, set aside, or correct the sentence.

---

[3] Mr. Valdez-Borja was represented by one attorney leading up to and during his plea hearing ("plea counsel") and by a different attorney thereafter ("sentencing counsel"). (CR Docs. 9, 24, 55, 56.)

28 U.S.C. § 2255(a). The remedy "does not encompass all claimed errors in conviction and sentencing." *United States v. Addonizio*, 442 U.S. 178, 185 (1979). It is well-established, though, that claims that the defendant was denied effective assistance of counsel under the Sixth Amendment are cognizable in habeas proceedings. *See Strickland v. Washington*, 466 U.S. 668 (1984). To succeed on a claim of ineffective assistance of counsel, however, the movant must satisfy both prongs of a two-part test:

> First, the defendant must show that counsel's performance was deficient. This requires showing that counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment. Second, the defendant must show that the deficient performance prejudiced the defense. This requires showing that counsel's errors were so serious as to deprive the defendant of a fair trial.

*Id.* at 687. In the context of a plea bargain, a defendant must establish that his counsel's performance was objectively unreasonable and that but for counsel's errors, he would not have pleaded guilty and would have instead gone to trial. *Hill v. Lockhart*, 474 U.S. 52, 56-60 (1985). The first prong demands that counsel attempt to learn the facts of the case and make a good-faith estimate of a likely sentence. *Id.* The second prong requires the defendant to show that his lawyer's deficiency was a decisive factor in his decision to plead guilty. *Id.* at 59. "If [the movant] is unable to show either 'deficient performance' or 'sufficient prejudice,' his claim of ineffective assistance necessarily fails." *Hooks v. Workman*, 606 F.3d 715, 724 (10th Cir. 2010). Courts "may address the performance and prejudice components in any order, but need not address both if [the movant] fails to make a sufficient showing of one." *Cooks v. Ward*, 165 F.3d 1283, 1292-93 (10th Cir. 1998).

Under the performance prong, "[j]udicial scrutiny of counsel's performance must be highly deferential," and "every effort [must] be made to eliminate the distorting effects of hindsight, to reconstruct the circumstances of counsel's challenged conduct, and to evaluate the conduct from

counsel's perspective at the time." *Strickland*, 466 U.S. at 689; *see Byrd v. Workman*, 645 F.3d 1159, 1168 (10th Cir. 2011) (stating that "review of counsel's performance under the first prong of *Strickland* is a highly deferential one" (internal quotation marks omitted)). Courts must "indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance; that is, the defendant must overcome the presumption that, under the circumstances, the challenged action might be considered sound trial strategy." *Strickland*, 466 U.S. at 689 (internal quotation marks omitted). "A convicted defendant making a claim of ineffective assistance must identify the acts or omissions of counsel that are alleged not to have been the result of reasonable professional judgment." *Id.* at 690.[4] "The court must then determine whether, in light of all the circumstances, the identified acts or omissions were outside the wide range of professionally competent assistance." *Id.* For counsel's performance to be constitutionally ineffective, it must have been "completely unreasonable, not merely wrong." *Hoxsie v. Kerby*, 108 F.3d 1239, 1246 (10th Cir. 1997) (quoting *Hatch v. Oklahoma*, 58 F.3d 1447, 1459 (10th Cir. 1995), *overruled on other grounds by Daniels v. United States*, 254 F.3d 1180, 1188 n.1 (10th Cir. 2001) (en banc)).

To satisfy the prejudice prong, "[t]he defendant must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceedings would have been different." *Strickland*, 466 U.S. at 694. "A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Id.* "The governing legal standard plays a critical role in defining the question to be asked in assessing the prejudice from counsel's errors." *Id.* To establish prejudice in the context of a guilty plea based on claimed ineffective assistance of

---

[4] Because Mr. Valdez-Borja is proceeding pro se, the Court construes his pleadings liberally. *See Erickson v. Pardus*, 551 U.S. 89, 94 (2007) ("A document filed *pro se* is to be liberally construed[.]" (internal quotation marks omitted)); *United States v. Pinson*, 584 F.3d 972, 975 (10th Cir. 2009) ("[W]e must construe [a pro se litigant's] arguments liberally; this rule of liberal construction stops, however, at the point at which we begin to serve as his advocate.").

counsel, a defendant "must show that there is a reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial." *Hill*, 474 U.S. at 59. When a defendant challenges his sentence, he "must show that there is a reasonable probability that but for [counsel's] deficient performance, he would likely have received a lower sentence." *United States v. Washington*, 619 F.3d 1252, 1262 (10th Cir. 2010) (citing *Glover v. United States*, 531 U.S. 198, 200 (2001)). In general, "[t]he assessment of prejudice should proceed on the assumption that the decisionmaker is reasonably, conscientiously, and impartially applying the standards that govern the decision." *Strickland*, 466 U.S. at 695.

### III.   ANALYSIS

Mr. Valdez-Borja alleges numerous instances of ineffective assistance of counsel, which the undersigned understands and addresses, in turn, as follows: (A) plea counsel provided ineffective assistance during the plea process (Doc. 1 at 16 (¶ 27)); (B) sentencing counsel provided ineffective assistance during the sentencing process (Doc. 1 at 11-16); (C) sentencing counsel provided ineffective assistance in prosecuting Mr. Valdez-Borja's appeal (Doc. 1 at 17 (¶ 31)); and (D) plea and/or sentencing counsel had an actual conflict of interest in representing Mr. Valdez-Borja, rendering their assistance per se ineffective (Doc. 1 at 17 (¶ 32)).

#### A.  Plea Counsel's Performance During the Plea Process

Due process requires that a defendant's plea of guilty be "voluntary and knowing." *Boykin v. Alabama*, 395 U.S. 238, 243 n.5 (1969). Otherwise, the plea of guilty is void. *Id.* "[T]he longstanding test for determining the validity of a guilty plea . . . is whether the plea represents a voluntary and intelligent choice among the alternative courses of action open to the defendant." *Tovar Mendoza v. Hatch*, 620 F.3d 1261, 1269 (10th Cir. 2010) (quoting *Hill*, 474 U.S. at 56) (internal quotation marks omitted). "A plea may be involuntary where an attorney materially

misrepresents the consequences of the plea; however, standing alone, an attorney's erroneous sentence estimate does not render a plea involuntary." *United States v. Silva*, 430 F.3d 1096, 1099 (10th Cir. 2005).

Mr. Valdez-Borja contends that plea counsel "failed to advise [him] as to all the facts and law relevant to his decision to plead guilty" and that had he been fully advised "there is a reasonable probability that he would have pleaded not guilty and proceeded to trial and/or proceed[ed] to a bench trial on stipulated facts." (Doc. 1 at 16 (¶ 27).) However, he fails to bolster these conclusory allegations with meaningful legal or factual arguments, and Mr. Valdez-Borja's conclusory allegations do not suffice to establish constitutionally deficient performance by his counsel or that his plea of guilty was involuntary or unintelligent. *See Hatch*, 58 F.3d at 1459, 1471-72; *Miller v. Champion*, 262 F.3d 1066, 1072 (10th Cir. 2001) ("a petitioner's mere allegation that he would have insisted on trial but for his counsel's errors, although necessary, is ultimately insufficient to entitle him to relief."); *United States v. Fisher*, 38 F.3d 1144, 1147 (10th Cir. 1994) (courts are "not required to fashion [d]efendant's arguments for him where his allegations are merely conclusory in nature and without supporting factual averments").

While not "decisive," "[t]he procedures under which a challenged plea was taken play an important . . . role in determining the validity of the plea." *Tovar Mendoza*, 620 F.3d at 1269. "[T]he representations of the defendant, his lawyer, and the prosecutor at [a plea hearing], as well as any findings made by the judge accepting the plea, constitute a formidable barrier in any subsequent collateral proceedings." *Id.* (quoting *Blackledge v. Allison*, 431 U.S. 63, 73-74 (1977)). "[S]olemn declarations in open court carry a strong presumption of verity." *Id.* (quoting *Blackledge*, 431 U.S. at 74). At his change of plea hearing, Mr. Valdez-Borja swore to tell the

truth under penalty of perjury, (CR Doc. 55 at 7), and the following Rule 11 colloquy occurred thereafter:

THE COURT: Have you gone over your case with your attorney and talked to him about the charge you're facing and any possible defense to that charge you might have?

THE DEFENDANT:  Yes, your Honor.

THE COURT: Did you have enough time to go over your case with your attorney and did he answer all of your questions about your case in this proceeding to your satisfaction?

THE DEFENDANT:  Yes, your Honor.

THE COURT: Are you pleased and satisfied with the advice and representation of your attorney?

THE DEFENDANT:  Yes, your Honor.

. . .

THE COURT: Do you understand that by pleading guilty today, you're giving up your right to a jury trial and all of the rights associated with a trial that I read to you at the beginning?

THE DEFENDANT:  Yes, your Honor.

THE COURT: Do you wish to give up these rights so that you can plead guilty today?

THE DEFENDANT:  Yes.

THE COURT: Do you understand that once you plead guilty and you're sentenced, you will not be able to change your mind and withdraw your plea?

THE DEFENDANT:  Yes, your Honor.

THE COURT: Have you received a copy of your information, or was that document read to you in English or did you read it yourself?

THE DEFENDANT:  Both me and my attorney read it.

. . .

THE COURT: You're charged with the felony offense of conspiring to transport an illegal alien.  Do you understand that charge?

THE DEFENDANT:  Yes, your Honor.

THE COURT:        When you're convicted, you face maximum penalties of up to ten years in prison, a fine of up to $250,000, up to three years of supervised release, and a $100 special penalty assessment.  Do you understand these maximum penalties?

THE DEFENDANT:  Yes, your Honor.

. . .

THE COURT:        . . . Before I can accept your guilty plea, I need to make sure it's going to be voluntary.  Except for what is contained in your Plea Agreement, did anybody promise you anything else in order to get you to plead guilty today, or is anyone forcing you to plead guilty today?

THE DEFENDANT:  No, your Honor.

THE COURT:        Are you pleading guilty of your own free will?

THE DEFENDANT:  Yes, your Honor.

(Doc. 55 at 8-11.)  The Court specifically advised Mr. Valdez-Borja that "it is not up to your attorney . . . to sentence you; it's up to your sentencing judge to do so after that judge received the presentence report" and "today your attorney can only give you an estimate of where your attorney thinks your case fits within [the sentencing] guidelines."[5] (CR Doc. 55 at 6, 12.)  Mr. Valdez-Borja confirmed his understanding of this and the fact that the sentencing judge had the authority to sentence him to "the maximum of ten years if that sentence is warranted." (CR Doc. 55 at 11-12.)

Mr. Valdez-Borja affirmed that he read his Plea Agreement and that his counsel read it to him, answered all of his questions about it to his satisfaction, and that he fully and completely understood each and every provision of it.  (CR Doc. 55 at 12-13.)  And, as part of the Plea

---

[5] Although not specifically raised by Mr. Valdez-Borja, the Court's review of the plea colloquy reflects that counsel "believed" Mr. Valdez-Borja faced an underestimated sentencing guideline range both as a result of his guilty plea and had he proceeded to trial.  (CR Doc. 14.)  However, "[a]n error by counsel, even if professionally unreasonable, does not warrant setting aside the judgment of a criminal proceeding if the error had no effect on the judgement." *Hill*, 474 U.S. at 57.  Notably, Mr. Valdez-Borja does not seek to have his conviction set aside, and instead only requests that his case be remanded for resentencing.  (Doc. 1 at 18; Doc. 3 at 10.)

Agreement, Mr. Valdez-Borja "agree[d] and represent[ed] that [his] plea of guilty is freely and voluntarily made and not the result of force or threats or of promises apart from those set forth in the plea agreement."  (CR Doc. 28 at 7.)  Mr. Valdez-Borja affirmed in his agreement that he "understands that . . . if the Court . . . reaches an advisory guideline sentence different than expected by [him], or if the Court varies from the advisory guideline range, [he] will not seek to withdraw [his] plea of guilty.  In other words, regardless of any stipulations the parties may enter into, [his] final sentence is solely within the discretion of the Court."  (CR Doc. 28 at 5.) Mr. Valdez-Borja's agreement also expressly provided that "the Sentencing Guidelines are advisory" and that the government "has made, and will make, NO AGREEMENT . . . that a specific sentence is the appropriate disposition of this case."  (CR Doc. 28 at 2.)  Above Mr. Valdez-Borja's signature, the following paragraph appeared:

> This agreement has been read to me in the language I understand best, and I have carefully discussed every part of it with my attorney.  I understand the terms of this agreement, and I voluntarily agree to those terms.  My attorney has advised me of my rights, or possible defenses, of the sentencing factors set forth in 18 U.S.C. § 3553(a), of the relevant sentencing guidelines provisions, and of the consequences of entering into this agreement.  No promises or inducements have been given to me other than those contained in this agreement.  No one has threatened or forced me in any way to enter into this agreement.  Finally, I am satisfied with the representation of my attorney in this matter.

(CR Doc. 28 at 8.)

When the Court accepted his plea of guilty, it specifically found that Mr. Valdez-Borja was aware of the nature of the charges against him, and the consequences of pleading guilty, and that his plea was knowing and voluntary. (Doc. 55 at 17-18.)  In light of this record and absent any specific factual averments by Mr. Valdez-Borja supporting his claim of deficient performance by plea counsel, he has failed to establish that his plea was unintelligent, involuntary or that his counsel's performance was constitutionally deficient.

Even if Mr. Valdez-Borja had met his burden of demonstrating that his counsel's performance was objectively ineffective, his allegations are insufficient to satisfy the prejudice prong of *Strickland*. Courts applying the standard for determining whether the prejudice prong has been met in the context of a guilty plea "will often review the strength of the prosecutor's case as the best evidence of whether a defendant in fact would have changed his plea and insisted on going to trial." *Miller*, 262 F.3d at 1072. Ultimately, "a petitioner must convince the court that a decision to reject the plea bargain would have been rational under the circumstances." *Padilla v. Kentucky*, 559 U.S. 356, 372 (2010).

The factual circumstances surrounding Mr. Valdez-Borja's plea do not support his undeveloped and self-serving claim that had he been "fully advised" by plea counsel, he would have pled not guilty and proceeded to trial. (Doc. 1 at 16 (¶ 27).) First, the prosecution's case against Mr. Valdez-Borja was strong. The two aliens whom Mr. Valdez-Borja was accused of illegally transporting were identified as material witnesses by the Government and, having been released to reside at a halfway house in Las Cruces under United States Probation and Pretrial Services supervision, were available and would have testified to their payment of money to Mr. Valdez-Borja in exchange for transport as well as to statements he made indicating that he transported aliens for a living and knew how to circumvent immigration checkpoints. (CR Doc. 3; CR Doc. 4; CR Doc. 6; CR Doc. 7; CR Doc. 33 at 4-5.) Law enforcement agents including those who encountered Mr. Valdez-Borja transporting the illegal aliens at a United States border patrol checkpoint and those who pursued and apprehended Mr. Valdez-Borja after he fled the secondary inspection area of the checkpoint would have provided additional firsthand testimony regarding his offense conduct including the fact that during his attempt to evade arrest, he drove for about one mile reaching speeds of 70 to 120 miles per hour in a 65 mile per hour zone, ran two vehicles

off the road with his dangerous driving, only stopped driving after his tires were deflated with a spike strip, and attempted to flee on foot. (CR Doc. 33 at 4.) Second, had Mr. Valdez-Borja rejected the plea offer, he would have continued to face the additional federal charge of fleeing an immigration checkpoint that the Government agreed in the Plea Agreement not to pursue. (CR Doc. 2; CR Doc. 28 at 6 (¶ 14).) That charge exposed Mr. Valdez-Borja to the possibility of additional imprisonment of up to five years. *See* 18 U.S.C. § 758 (providing that a violation of that section is punishable by, *inter alia*, imprisonment "not more than five years").

At the time he entered his guilty plea, (and before he chose to obstruct justice by absconding from supervision and failing to make himself available for his sentencing as originally scheduled), Mr. Valdez-Borja was facing an offense level of 18 for his specific offense conduct and an adjusted offense level of 15 (in the event the Court accepted the parties' non-binding stipulation to a three-level reduction for acceptance of responsibility). (CR Doc. 28 at 4-5, CR Doc. 33 at 6); U.S.S.G. § 2L1.1. An offense level 15 and criminal history category IV placed Mr. Valdez-Borja at a guideline imprisonment range of 30-37 months. (CR Doc. 6-11); U.S.S.G. Chapter 5, Part A. In contrast, had Mr. Valdez-Borja proceeded to trial and been convicted of both charges, he would have faced, an advisory guideline imprisonment range, at best, of 41-51 months.[6] U.S.S.G. Chapter 5, Part A.

Under these factual circumstances, a decision to reject the plea being offered by the Government would not have been rational. Mr. Valdez-Borja has made no credible showing that he would have elected to forgo his guilty plea and proceed to trial absent counsel's alleged deficient

---

[6] That Mr. Valdez-Borja engaged in conduct following his guilty plea but before judgment was entered which enhanced his advisory guidelines sentencing range to one equivalent to that he faced had he proceeded to trial and not subsequently obstructed justice by absconding, does not demonstrate that at the time of his guilty plea it would have been a rational decision to reject the plea offer. Indeed, had Mr. Valdez-Borja proceeded to trial, remained on release pending sentencing, and engaged in the same obstructive behavior by absconding prior to sentencing, he would have faced an even higher advisory guideline range of 51 to 63 months' imprisonment. U.S.S.G. Chapter 5, Part A.

performance in advising him as to "all the facts and law relevant to his decision to plead guilty." (Doc. 1 at 16 (¶ 27).) Mr. Valdez-Borja has failed to demonstrate ineffective assistance of his plea counsel under *Strickland*.

### B. Sentencing Counsel's Performance During the Sentencing Process

Mr. Valdez-Borja alleges that sentencing counsel's performance was deficient in numerous respects. (Doc. 1 at 11-16.) He contends that sentencing counsel "could have but did not object [to] or challenge" each of the adjustments the Court either made or refused to afford under the United States Sentencing Guidelines ("U.S.S.G." or "the Guidelines"). (Doc. 1 at 11 (¶ 19).) He also argues that sentencing counsel rendered ineffective assistance by failing to move for "an appropriate downward variance under 18 U.S.C. § 3553(a)." (Doc. 1 at 16-17 (¶ 30).) The undersigned addresses, in turn, Mr. Valdez-Borja's contentions as to each of the sentencing adjustments at issue in this case.

### 1. U.S.S.G. § 2L1.1(b)(6) Adjustment for Reckless Endangerment

In its Presentence Investigation Report ("PSR"), the United States Probation Office ("USPO") recommended an upward adjustment to Mr. Valdez-Borja's base offense level under U.S.S.G. § 2L1.1(b)(6), which provides that "[i]f the offense involved intentionally or recklessly creating a substantial risk of death or serious bodily injury to another person, increase [the offense level] by 2 levels, but if the resulting offense level is less than level 18, increase to level 18." (CR Doc. 33 at 6.) The recommended adjustment was based on Mr. Valdez-Borja's acts of (1) fleeing the immigration checkpoint at speeds of up to 120 mph with two passengers in his vehicle, and (2) running at least two vehicles off the roadway during his flight. (CR Doc. 33 at 5 (¶ 11).)

In the objections she filed to the PSR, sentencing counsel objected to the adjustment on legal grounds, arguing that it was "unwarranted and completely out of proportion with the reckless

endangerment enhancement" under a different section of the Guidelines. (CR Doc. 39 at 2-3; CR Doc. 56 at 4:4-13.) At Mr. Valdez-Borja's sentencing hearing after the Government referred to "helpless, unrestrained human beings in a vehicle that is fleeing from law enforcement" in arguing why U.S.S.G. § 2L1.1(b)(6)'s adjustment should be applied under the facts of this case (CR Doc. 56 at 7:7-23), sentencing counsel additionally challenged the factual basis for the adjustment, pointing out that there was no evidence that the passengers were unrestrained. (CR Doc. 56 at 12:18-21.) Mr. Valdez-Borja also affirmatively stated to the Court that his passengers "did have a seat belt[.]" (CR Doc. 56 at 14:14-17.) The Court found that there existed a sufficient factual basis supporting the adjustment based on the conduct described in the PSR—i.e., evidence of the high-speed flight and that Mr. Valdez-Borja had run other vehicles off the road—and thus increased Mr. Valdez-Borja's base offense level accordingly. (CR Doc. 56 at 15:14-16:17.)

Mr. Valdez-Borja contends that "[sentencing] counsel failed to object to [the] enhancement[] under [U.S.S.G. § 2L1.1(b)(6)] related to reckless endangerment when speeding away from law enforcement with aliens who were wearing seatbelts[.]" (Doc. 2 at 11.) Mr. Valdez-Borja's contention is neither factually accurate nor legally sufficient to establish a claim of ineffective assistance of counsel. The record is clear that the Court's finding that the evidence supported the adjustment was based not on whether Mr. Valdez-Borja's passengers were wearing, or had available to them, seatbelts but rather on Mr. Valdez-Borja's affirmative conduct of fleeing law enforcement at 120 mph and running innocent drivers off the road. Moreover, as noted previously, sentencing counsel objected to the enhancement and advanced a legal argument as to why the Court should not apply U.S.S.G. § 2L1.1(b)(6)'s adjustment. She additionally objected to the Government's representation of the facts supporting the enhancement, i.e., that the passengers were "unrestrained." There was nothing deficient about sentencing counsel's performance in this

regard, and the Court's application of the adjustment over sentencing counsel's objections does not mean that Mr. Valdez-Borja received ineffective assistance of counsel.

### 2. U.S.S.G. § 3C1.1 Adjustment for Obstruction

The Court applied an upward adjustment of two levels to Mr. Valdez-Borja's offense level under U.S.S.G. § 3C1.1, which provides,

> If (1) the defendant willfully obstructed or impeded, or attempted to obstruct or impede, the administration of justice with respect to the investigation, prosecution, *or sentencing* of the instant offense of conviction, and (2) the obstructive conduct related to (A) the defendant's offense of conviction and any relevant conduct; or (B) a closely related offense, increase the offense level by 2 levels.

U.S.S.G. § 3C1.1 (emphasis added). It did so after finding that Mr. Valdez-Borja's conduct while on supervised release pending sentencing—which included absconding from supervision for over five months and demonstrating hostility towards and disrespect of his supervising officer—warranted the adjustment. (CR Doc. 33 at 5 (¶ 11); CR Doc. 37; CR Doc. 56 at 16:18-19:6.)

Mr. Valdez-Borja did not and does not dispute that he absconded from supervision. Instead, he argues that being hostile towards his supervising officer is not "covered conduct" under U.S.S.G. § 3C1.1 and contends that sentencing counsel's failure to object to the application of this adjustment on that ground constituted ineffective assistance of counsel. (Doc. 1 at 11, 15; Doc. 2 at 12-13.) While correct that sentencing counsel did not object to the application of the obstruction adjustment, Mr. Valdez-Borja is wrong that that omission rendered sentencing counsel's performance deficient, much less constitutionally ineffective.

"Covered Conduct" under U.S.S.G. § 3C1.1 includes "escaping or attempting to escape from custody before trial or sentencing[.]" U.S.S.G. § 3C1.1 cmt. n.4(E). The sentencing court is to use the non-exhaustive list of examples of covered conduct set forth in Application Note 4 in determining whether the adjustment is warranted. *See* U.S.S.G. § 3C1.1 cmt.3. It cannot

reasonably be said that Mr. Valdez-Borja's affirmative conduct of absconding from pretrial supervision does not meet the definition of "covered conduct" under U.S.S.G. § 3C1.1. The record evinces that: (1) Mr. Valdez-Borja ignored his supervising officer's directions to report on numerous occasions; (2) an arrest warrant was issued for Mr. Valdez-Borja on September 15, 2016 after Mr. Valdez-Borja failed to report to the halfway house in Albuquerque as directed by his supervising officer; and, (3) Mr. Valdez-Borja's whereabouts were unknown from September 15, 2016 through February 17, 2017, impeding the court's ability to sentence Mr. Valdez-Borja. (CR Docs. 30, 32, 33, 37.) That the Court additionally noted that Mr. Valdez-Borja demonstrated hostility towards his supervising officer does not somehow undermine the Court's application of the adjustment. Concomitantly, it does not render sentencing counsel's failure to object to the Court's reference to Mr. Valdez-Borja's hostility towards his supervising officer ineffective assistance of counsel. Indeed, in light of the overwhelming and undisputed evidence that Mr. Valdez-Borja failed to comply with his conditions of release, sentencing counsel's failure to object to the Court's application of this adjustment fell within the wide range of professionally competent, strategic choices that constitute reasonable professional assistance.

The undersigned additionally notes that Mr. Valdez-Borja has failed to meet his burden of establishing that any allegedly deficient performance by sentencing counsel regarding her handling of the obstruction adjustment resulted in prejudice to Mr. Valdez-Borja. Even if sentencing counsel had objected to the Court's reference to Mr. Valdez-Borja's hostility towards his supervising officer and succeeded in convincing the Court that such conduct should not be considered in determining the applicability of U.S.S.G. § 3C1.1's adjustment, it would not have foreclosed the Court's application of the adjustment. The principal basis the Court relied upon in applying the adjustment was Mr. Valdez-Borja's undenied act of absconding, which alone qualified Mr.

Valdez-Borja for the upward adjustment. There is not a reasonable probability that the Court would have given Mr. Valdez-Borja a lower sentence had his counsel argued that it should not consider Mr. Valdez-Borja's hostility. Thus, Mr. Valdez-Borja also cannot establish the prejudice prong on this basis.

### 3. U.S.S.G. § 3E1.1 Adjustment for Acceptance of Responsibility

U.S.S.G. § 3E1.1 provides:

(a) If the defendant clearly demonstrates acceptance of responsibility for his offense, decrease the offense level by 2 levels.

(b) If the defendant qualifies for a decrease under subsection (a), the offense level determined prior to the operation of subsection (a) is level 16 or greater, and upon motion of the government stating that the defendant has assisted authorities in the investigation or prosecution of his own misconduct by timely notifying authorities of his intention to enter a plea of guilty, thereby permitting the government to avoid preparing for trial and permitting the government and the court to allocate their resources efficiently, degrease the offense level by 1 additional level.

U.S.S.G. § 3E1.1.

The Plea Agreement included a non-binding stipulation that the Government would agree to offense-level reductions under U.S.S.G. § 3E1.1(a) and (b) "so long as [Mr. Valdez-Borja] continues to accept responsibility for [his] conduct" and "meets the requirements of U.S.S.G. § 3E1.1(b)[.]" (CR Doc. 28 at ¶ 9.) The Plea Agreement also provided that Mr. Valdez-Borja understood that the parties' stipulations as to reductions under U.S.S.G. § 3E1.1 "are not binding on the Court and that whether the Court accepts these stipulations is a matter solely within the discretion of the Court after it has reviewed the presentence report." (CR Doc. 28 at ¶ 10.) At Mr. Valdez-Borja's sentencing hearing in June 2017, the Government supported a full three-level reduction under U.S.S.G. § 3E1.1 despite the USPO's recommendation in the PSR that Mr. Valdez-Borja not be given the reduction based on the fact that he had absconded from pretrial supervision, indicating that he "has not clearly demonstrated acceptance of responsibility for the

offense." (CR Doc. 33 at 3 (¶ 5), 6 (¶ 23); CR Doc. 56 at 10:25-11:24.) The Court afforded Mr. Valdez-Borja a two-level reduction for accepting responsibility based on the Plea Agreement's stipulation but declined to afford Mr. Valdez-Borja the full three-level reduction. (CR Doc. 56 at 17:7-14.)

Contending that the Government "breached" the Plea Agreement, Mr. Valdez-Borja argues that sentencing counsel's failure to object to the Government's breach and to the Court's refusal to afford him the full three-level reduction stipulated to in the Plea Agreement constituted deficient performance. (Doc. 1 at 11 (¶ 19).) Mr. Valdez-Borja is, again, wrong about the facts and the law.

The Government did not "breach" the Plea Agreement and, indeed, expressly requested at the sentencing hearing that the full three-level reduction be applied. (CR Doc. 56 at 11:2-11.) Mr. Valdez-Borja's allegation of deficient performance based on sentencing counsel's failure to object to the Government's "breach" thus fails as a matter of fact. His contention that sentencing counsel's failure to object to the Court's refusal to grant the additional one-level reduction constitutes constitutionally ineffective assistance fails as a matter of law. Initially, the undersigned notes that there is an obvious tactical reason why sentencing counsel would not have pressed that issue: Mr. Valdez-Borja had neither a legal nor a factual entitlement to the reduction. The Plea Agreement, which Mr. Valdez-Borja acknowledged he understood and voluntarily entered into, expressly provided that whether the Court accepted the Government's stipulation to an adjustment for acceptance of responsibility was "a matter solely within the discretion of the Court after it has reviewed the presentence report." (CR Doc. 28 at ¶ 10; CR Doc. 55.) Moreover, the Court would have been well within its discretion to refuse to grant *any* reduction under U.S.S.G. § 3E1.1 given that it found that Mr. Valdez-Borja had obstructed the administration of justice by absconding prior to sentencing. *See* U.S.S.G. § 3E1.1 cmt. 4 ("Conduct resulting in an enhancement under

§ 3C1.1 (Obstructing or Impeding the Administration of Justice) ordinarily indicates that the defendant has not accepted responsibility for his criminal conduct. There may, however, be extraordinary cases in which adjustments under both §§ 3C1.1 and 3E1.1 may apply."). On these facts, the fact that sentencing counsel did not object to the Court's refusal to afford Mr. Valdez-Borja the additional one-level reduction under U.S.S.G. § 3E1.1(b) was objectively reasonable.

Mr. Valdez-Borja's claim on this basis also fails because he cannot establish that he was prejudiced by sentencing counsel's performance. The Court was well aware of the Plea Agreement's non-binding stipulation regarding the up to three-level adjustment under U.S.S.G. § 3E1.1. It was also well aware of the Government's support for a full three-point reduction despite Mr. Valdez-Borja's conduct on pretrial supervision. And it went without saying that Mr. Valdez-Borja supported the full reduction. There is no reasonable probability that but for sentencing counsel's failure to object and/or advance her own argument regarding why the Court should afford the full three-level reduction, Mr. Valdez-Borja would have received a lower sentence.

### 4. U.S.S.G. § 3B1.2(b) Adjustment for Minor Participant Role

Mr. Valdez-Borja alleges that sentencing counsel performed deficiently in arguing for a mitigating role adjustment under U.S.S.G. § 3B1.2(b). (Doc. 1 at 11 (¶ 19); Doc. 2 at 12.) Under U.S.S.G. § 3B1.2(b), a sentencing court has discretion to decrease the offense level by two levels "[i]f the defendant was a minor participant in any criminal activity[.]" U.S.S.G. § 3B1.2(b). A "minor participant" is someone "who is less culpable than most other participants in the criminal activity, but whose role could not be described as minimal." U.S.S.G. § 3B1.2 cmt. 6. The adjustment only applies if there is more than one participant involved in the offense. *Id.* cmt. 2. Application Note 3(C) to U.S.S.G. § 3B1.2 provides a non-exhaustive list of factors that the sentencing court "should consider" in determining whether to apply a role adjustment, including

"the degree to which the defendant exercised decision-making authority[,]" "the nature and extent of the defendant's participation in the commission of the criminal activity, including the acts the defendant performed and the responsibility and discretion the defendant had in performing those acts[,]" and "the degree to which the defendant stood to benefit from the criminal activity." U.S.S.G. § 3B1.2 cmt. n.3(C). Ultimately, "[t]he determination whether to apply [the mitigating-role adjustment] is based on the totality of the circumstances and involves a determination that is heavily dependent upon the facts of a particular case." *Id.*

> The PSR noted that
>
> the extent of [Mr. Valdez-Borja's] involvement [in the transporting operation] is unclear; however, information provided by [the aliens being transported] reflects they paid [Mr. Valdez-Borja], who indicated he transported aliens for a living. In this case, he was to be paid $1,000 to transport them to Colorado. [Mr. Valdez-Borja] traveled independently in his personal vehicle to Las Cruces, New Mexico, and intended to transport the undocumented aliens back to Colorado. There is no information to suggest [Mr. Valdez-Borja was] acting at the direction of another as he was the only known point of contact[] and received direct payment in the smuggling scheme.

(CR Doc. 33 at 5 (¶ 11).) The USPO thus concluded that Mr. Valdez-Borja's role "is not mitigating nor aggravating" and that "no role adjustment is warranted." (Id.)

Sentencing counsel specifically objected to the PSR's recommendation against application of U.S.S.G. § 3B1.2(b). (CR Doc. 39 at 3-4.) In arguing that Mr. Valdez-Borja should be granted the minor-participant adjustment, sentencing counsel pointed to evidence that there was another participant in the criminal activity, which the PSR itself acknowledged. (CR Doc. 39 at 4; *see* CR Doc. 33 at 4-5 (¶ 10).) According to sentencing counsel, it was the other participant (Kelly LNU), not Mr. Valdez-Borja, "who made the [transporting] arrangements." (Id.) Sentencing counsel additionally argued that Mr. Valdez-Borja "did not decide where to pick the men up nor where to drop them off" and that he "did not have decision-making authority" in the activity. (Id.) She

characterized Mr. Valdez-Borja as "just the driver" whose only role was to get the aliens "from point A to point B." (CR Doc. 39 at 4; CR Doc. 56 at 4:14-22.) The Court was not persuaded. It noted that due to the nature of Mr. Valdez-Borja's crime (conspiracy), Mr. Valdez-Borja indeed faced the possibility of an *upward* adjustment for playing an aggravating role—i.e., being an organizer, leader, manager, or supervisor—in the criminal activity. (CR Doc. 56 at 17:18-20.) *See* U.S.S.G. § 3B1.1 (providing for an upward adjustment of two levels if the defendant was "an organizer, leader, manager, or supervisor" in the criminal activity). The Court ultimately concluded that there was insufficient evidence to support either an upward or downward role-based adjustment. (CR Doc. 56 at 17:15-18:1.)

Mr. Valdez-Borja identifies—and the undersigned finds—no aspect of sentencing counsel's performance that was deficient. The fact that the Court found sentencing counsel's argument for applying the mitigating-role adjustment unpersuasive does not somehow lead to the conclusion that Mr. Valdez-Borja received ineffective assistance of counsel. Mr. Valdez-Borja's claim on this basis fails as well.

## 5. U.S.S.G. § 4A1.1 Criminal History Category

Based on his prior convictions, Mr. Valdez-Borja was assigned to criminal history category IV. (CR Doc. 33 at 6-11.) He contends that he "received ineffective assistance of counsel related to the scoring of his criminal history category" and specifically alleges that "3 of the six traffic offenses utilized by the probation department on the [PSR] did not qualify for scoring[.]" (Doc. 2 at 13.) He also argues that it was improper to include the state charges stemming from the same offense conduct forming the basis of his federal prosecution in calculating his criminal history category. (Doc. 3 at 7.) The main, and dispositive, problem with Mr. Valdez-Borja's arguments is

that none of the criminal offenses he complains of was in fact included in calculating his criminal history category.

Mr. Valdez-Borja was assigned to criminal history category IV based on his criminal history score of seven (7), which was calculated as follows: (1) one point for his conviction for possession of a controlled substance in August 2010, for which he was sentenced to thirty days in custody; (2) two points for an August 2011 conviction for driving on a revoked license, for which he was sentenced to four months' imprisonment; (3) two points for a January 2012 conviction for driving on a revoked license, for which he was sentenced to 270 days' imprisonment; and (4) two points for an August 2013 conviction for driving on a revoked license, for which he was sentenced to 300 days' imprisonment. (CR Doc. 33 at 8-10.) *See* U.S.S.G. § 4A1.1(b) ("Add 2 points for each prior sentence of imprisonment of at least sixty days not counted in (a)."); U.S.S.G. § 4A1.1(c) ("Add 1 point for each prior sentence not counted in (a) or (b)[.]"); U.S.S.G. § 4A1.2(c) (providing that "[s]entences for all felony offenses are counted"); U.S.S.G. 4A1.2(c)(1) (providing that a sentence for "[d]riving without a license or with a revoked or suspended license" is counted if the sentence was for "a term of imprisonment of at least thirty days"). Mr. Valdez-Borja is simply wrong that certain offenses were improperly included in his criminal history score. While the PSR identified twelve adult criminal convictions against Mr. Valdez-Borja, it included only the four foregoing prior sentences in calculating Mr. Valdez-Borja's criminal history score. (CR Doc. 33 at 7-10.) The other eight listed offenses were each assigned a point value of zero. (CR Doc. 33 at 7-10 (¶¶ 27-31, 33, 34, 38).) Mr. Valdez-Borja did not receive ineffective assistance of counsel related to the assignment of his criminal history category.

### 6. Downward Departure Under 18 U.S.C. § 3553

Mr. Valdez-Borja contends that "counsel unprofessionally failed to move for an appropriate downward departure under 18 U.S.C. § 3553(a)[.]" (Doc. 1 at 16-17 (¶ 30).) The record plainly refutes this contention.

The PSR identified and discussed the section 3553(a)(1)-(7) factors that the Court was required to consider. (CR Doc. 33.) And, in Defendant's Objections to the Presentence Report and Motion for Departure, sentencing counsel argued that "[a] sentence of 12 months and one day, within the guideline range of criminal history category II, would be more appropriate considering [Mr. Valdez-Borja's] actual criminal history[,]" which sentencing counsel argued was "substantially over-represented." (CR Doc. 39 at 4.) *See* U.S.S.G. § 4A1.3(b) ("If reliable information indicates that the defendant's criminal history category substantially over-represents the seriousness of the defendant's criminal history or the likelihood that the defendant will commit other crimes, a downward departure may be warranted."). Sentencing counsel characterized Mr. Valdez-Borja's prior convictions, other than the drug-related offense, as "minor traffic offenses" and argued that assigning six criminal history points based on the "minor, non-violent traffic offense" of driving under restraint "vastly over-represents [Mr. Valdez-Borja's] prior criminal history." (CR Doc. 39 at 4.) Sentencing counsel again pressed for a sentence of 12 months and a day at Mr. Valdez-Borja's sentencing hearing, relying on his over-represented criminal history, and other 3553(a) factors. (CR Doc. 56 at 3, 6, 12.)

The Court expressly considered the factors set forth in Sections 3553(a) (1) through (7) and disagreed with counsel's requested sentence. (CR Doc. 56 at 18-21.) In doing so, it acknowledged that many of the twelve convictions listed in the PSR were "traffic-related" but found that Mr. Valdez-Borja's criminal history score was properly calculated and that it "accurately reflects the seriousness of [Mr. Valdez-Borja's] criminal history." (CR Doc. 56 at

18:21-19:11.) The Court reviewed the totality of that history, noting that in addition to a juvenile conviction at age sixteen, Mr. Valdez-Borja had two convictions at age eighteen, three convictions at age nineteen, one conviction at age twenty, two convictions at age twenty-one, two convictions at age twenty-two, one conviction at age twenty-three, one conviction at age twenty-six, and another pending charge for burglary. (CR Doc. 56 at 18:24-19:6.) The Court stated, "Your history suggests that you've been running amuck," and cautioned Mr. Valdez-Borja that he was on his way to the highest criminal history category of VI. (CR Doc. 56 at 19:14-22.) In other words, the Court did not believe that Mr. Valdez-Borja's criminal history was over-represented or that a downward departure to twelve months and a day was warranted. Nonetheless, the Court varied 36 days for uncredited state custody time the Mr. Valdez-Borja served during the pendency of his case. (CR Doc. 51 at 21; CR Doc. 47.)

Based on the foregoing, Mr. Valdez-Borja's contention that sentencing counsel was ineffective in arguing for a departure also fails.

### C. Counsel's Post-Sentencing Performance

Mr. Valdez-Borja contends that counsel failed to (1) "investigate or present the strongest issues available to [Mr. Valdez-Borja] for direct appeal" and/or (2) "preserve issues for collateral review." (Doc. 1 at 17 (¶ 31).) These proffered bases for finding ineffective assistance of counsel are also without merit. First, the Plea Agreement contained an appeal waiver, which provided that

> the defendant knowingly waives the right to appeal the defendant's conviction(s) and any sentence, including any fine, at or under the maximum statutory penalty authorized by law, as well as any order of restitution entered by the Court. In addition, the defendant agrees to waive any collateral attack to the defendant's conviction(s) and any sentence, including any find, pursuant to 28 U.S.C. §§ 2241, 2255, or any other extraordinary writ, except on the issue of defense counsel's ineffective assistance.

(CR Doc. 28 at 6 (¶ 13).) Despite this waiver, sentencing counsel filed a notice of appeal on Mr. Valdez-Borja's behalf. (CR Doc. 48.) She also filed an *Anders* brief and a motion for leave to withdraw.[7] (CR Doc. 60-1 at 2.) The Tenth Circuit found the appeal waiver valid, dismissed the appeal, and granted sentencing counsel's motion to withdraw. (CR Doc. 60-1 at 2-3.) Sentencing counsel's performance on direct appeal was not deficient.

Second, Mr. Valdez-Borja's contention that sentencing counsel rendered constitutionally ineffective assistance because she "failed to preserve issues for collateral review" necessarily fails. As noted, the Plea Agreement provided that the only issue that could be collaterally attacked was defense counsel's ineffective assistance. (CR Doc. 28 at 6 (¶ 13).) Claims of ineffective assistance of counsel need not be preserved and may be raised for the first time in a proceeding under 28 U.S.C. § 2255. *See Massaro v. United States*, 538 U.S. 500 (2003) (holding that ineffective assistance of counsel claims need not be raised on direct appeal in order to be preserved for collateral review and may be raised for the first time in collateral proceedings). Sentencing counsel's failure to preserve Mr. Valdez-Borja's claims of ineffective assistance of counsel on direct appeal did not constitute deficient performance.

### D. Conflict of Interest

Mr. Valdez-Borja's final proffered claim of ineffective assistance of counsel rests on his bald assertion that "counsel labored under an actual conflict of interest[.]" (Doc. 1 at 17 (¶ 32).) Other than a vague and ambiguous statement that "[c]ounsel owed a 'duty' other than to [Mr. Valdez-Borja]" (id.), Mr. Valdez-Borja provides no explanation of what the claimed "conflict" was. Mr. Valdez-Borja does not even identify to whom counsel—plea and/or sentencing—purportedly owed a duty, much less explain how that duty created an actual conflict with counsel's

---

[7] *See Anders v. California*, 386 U.S. 738, 744 (1967) (providing that defense counsel may "request permission to withdraw" when counsel conscientiously examines a case and determines that an appeal would be "wholly frivolous").

representation of him. *See Cuyler v. Sullivan*, 446 U.S. 335, 350 (1980) (explaining that "until a defendant shows that his counsel actively represented conflicting interests, he has not established the constitutional predicate for his claim of ineffective assistance"); *Hammon v. Ward*, 466 F.3d 919, 929 (10th Cir. 2006) ("An 'actual conflict' cannot be demonstrated merely by 'the possibility for conflict,' . . . nor may it be demonstrated by 'the mere appearance of impropriety[.]' . . . Instead, the Supreme Court has held that the claimant must show 'that his counsel actively represented conflicting interests.'" (citations omitted)). Nothing in the record, Mr. Valdez-Borja's unsworn affidavit, or statements made anywhere in Mr. Valdez-Borja's pleadings even remotely suggests an actual conflict of interest by either plea counsel or sentencing counsel. Like each of his other claims, Mr. Valdez-Borja's unsupported claim of ineffective assistance of counsel premised on an alleged conflict of interest fails.

### E. Evidentiary Hearing

Mr. Valdez-Borja requests an evidentiary hearing "where he can prove his case." (Doc. 2 at 17.) "To be entitled to an evidentiary hearing on claims raised in a habeas petition, the petitioner must allege facts which, if proved, would entitle him to relief." *Hatch*, 58 F.3d at 1471 (alteration and internal quotation marks omitted). "[T]he allegations must be specific and particularized, not general or conclusory." *Id.* Where the "motion and the files and records of the case conclusively show that the prisoner is entitled to no relief," an evidentiary hearing is not required. 28 U.S.C. § 2255(b); *see United States v. Marr*, 856 F.3d 1471, 1472 (10th Cir. 1988).

Mr. Valdez-Borja has set forth no specific, particularized allegations which would entitle him to relief. The statements he makes in his sworn petition and his unsworn affidavit are descriptive in nature and do little more than convey details regarding his whereabouts, conduct, and communications with counsel and his supervising officer during the period when he absconded

from pretrial supervision, details that have no bearing on the claims he raises in the Motion. (Doc 1; Doc. 2 at 19-20; Doc. 3 at 8-9.) Notably, Mr. Valdez-Borja generally alleges in his Motion that counsel "failed to investigate or present available evidence . . . material to" his sentencing and "failed to object to[] unlawful, false[,] and unreliable evidence used to determine [his] guideline sentence range[.]" (Doc. 1 at 16 (¶ 29).) However, nowhere in any of his pleadings or his affidavit does Mr. Valdez-Borja make any allegations regarding or identify evidence that was purportedly "available" and that sentencing counsel failed to bring to the attention of the Court. Nor does he suggest, much less identify with specificity, what evidence was unlawful, false, or unreliable. Mr. Valdez-Borja's general and conclusory allegations, which fail to contradict the evidence of record as to each of his claims, are insufficient to require an evidentiary hearing.

## IV. CONCLUSION

For the foregoing reasons, the undersigned proposes to find that the Motion, exhibits, and record conclusively establish that Mr. Valdez-Borja is not entitled to the relief he seeks. Consequently, the undersigned recommends that the Court DISMISS with prejudice Mr. Valdez-Borja's Motion Under 28 U.S.C. § 2255 to Vacate, Set Aside, or Correct Sentence by a Person in Federal Custody.

KIRTAN KHALSA
UNITED STATES MAGISTRATE JUDGE

> **THE PARTIES ARE FURTHER NOTIFIED THAT WITHIN 14 DAYS OF SERVICE** of a copy of these Proposed Findings and Recommended Disposition they may file written objections with the Clerk of the District Court pursuant to 28 U.S.C. § 636(b)(1). **A party must file any objections with the Clerk of the District Court within the fourteen-day period if that party wants to have appellate review of the proposed findings and recommended disposition. If no objections are filed, no appellate review will be allowed.**